In the Matter of ANTONIO FINOCCHAIRO, Petitioner, v. JOSEPH P. KELLY, as Commissioner of Motor Vehicles of the State of New York, Respondent.— Memorandum: The record is procedurally irregular but, in the interest of expediting a final disposition of the case, we have treated the minutes of the hearing which are included in the record as having been submitted by consent at Special Term in lieu of an answer. On the merits, the determination should be annulled. A request by an automobile operator who has been placed under arrest on a charge of driving while intoxicated, that he be given an opportunity to consult with his attorney before submitting to a blood test is a reasonable request and should be honored. The petitioner in this case indicated that he would submit to the test, if his attorney so advised him. He should have been given an opportunity to telephone to his attorney to obtain his advice (*People* v. *Noble,* 9 N Y 2d 571). Section 71-a of the Vehicle and Traffic Law was amended by chapter 320 of the Laws of 1954, so as to specifically provide that the driver must be placed under arrest before a request can lawfully be made that he submit to a chemical test. The amendment was adopted to overcome the effect of the decision in *Matter of Schutt* v. *Macduff* (205 Misc. 43), holding that the statute in its original form was unconstitutional in that it permitted a police officer to make a request for submission to a blood test without first putting the driver under arrest. The thrust of the amendment is that the police officer must proceed in accordance with the rules prescribed for criminal proceedings (see pp. 52–53). This includes giving the arrested person an opportunity to consult with counsel, if he requests permission to do so (*People* v. *Noble, supra*). While everyone is presumed to know the law, a citizen who is in doubt as to his legal duty is not bound to accept a police officer's word for it. He is entitled to obtain confirmation as to the asserted duty from his attorney before he can be called upon to say whether he would or would not perform the duty. Of course, account must be taken of the fact that the test must be taken promptly if it is to be effective and an unreasonable delay need not be countenanced. In this case, there is nothing to show that the attorney could not have been reached by telephone promptly. In the analogous cases of punishment of a witness for contempt for refusal to answer a question or of forfeiture of a public office for refusal of the officer to answer questions concerning the conduct of his office, it is uniformly held that the witness or officer must be given an opportunity to consult with counsel before he can be charged with an unqualified refusal warranting the imposition of the penalty (cf. *People* v. *O'Dowd,* 8 A D 2d 468, 472). It should be borne in mind that the license revocation in this case is not based upon driving while intoxicated but upon the alleged refusal to take a test. There was no willful or unqualified refusal. There was merely a request for an opportunity to consult a lawyer. There was therefore no basis for revocation of the petitioner's license. All concur, except Williams, P. J., and Goldman, J., who dissent and vote to confirm, in the following memorandum: In our opinion, the petitioner's license was properly revoked. He was asked to take a blood test to determine alcoholic content pursuant to section 71-a of the Vehicle and Traffic Law. He refused to take the test except under certain

conditions. He asked the arresting officer to call his lawyer and said he would submit to the test if his lawyer so advised him. His lawyer was not called and the test was never administered. The plan and purpose of section 71-a is that if a person is driving while intoxicated he will lose his license. This may occur in one or two ways; first, as the result of a test if permitted by him; second, by revocation because of refusal to permit the test. There is no middle course. There is no such thing as a qualified consent. Either he unqualifiedly consents or he loses his license. This may seem harsh but it is necessary to the protection of the public. This is not a field for legal niceties or fine distinctions. By operating his car within this State defendant gave his absolute unconditional consent to the requested blood test. He could either submit to the test and take a chance on losing his license as the result of the test or a conviction based at least in part on the test, or he could refuse and suffer revocation. We should remember that this is not a criminal proceeding in which defendant was constitutionally entitled to advice of counsel. Blood tests are part of a civil administrative proceeding. "Revocation or suspension hereunder shall be deemed an administrative act reviewable by the supreme court as such." (Vehicle and Traffic Law, § 71, subd. 6.) We had occasion to pass on this very problem in *Matter of Zdan* v. *Kelly* (4 A D 2d 1004). In that case, we affirmed the determination of the commissioner revoking a license. In closing, we might observe that petitioner was not unsophisticated in these matters. His license was revoked in 1957 because of driving while intoxicated. The determination of the commissioner should be confirmed (*People* v. *Coppock*, 206 Misc. 89; *Matter of Anderson* v. *Macduff*, 208 Misc. 271). (Review of the action of the Commissioner of Motor Vehicles revoking petitioner's driver's license, which proceeding was transferred to the Appellate Division for determination by order of Monroe Special Term.) Present — Williams, P. J., Bastow, Goldman, Halpern and McClusky, JJ.